IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| LEE ANDREW TAYLOR | § | |
| Petitioner, | § | |
| v. | § | No. 4:04cv150 |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, Correctional Institutions Division, | § | |
| Respondent. | § | |

**MEMORANDUM OPINION**

  Lee Andrew Taylor ("Taylor") an inmate confined to the Texas Department of Criminal Justice, Correctional Institutions Division, filed an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Taylor challenged his capital murder conviction and death sentence imposed by the 202nd Judicial District Court of Bowie County, Texas, in cause No. 99F-0504-202, styled *The State of Texas vs. Lee Andrew Taylor*. Having considered the circumstances alleged and authorities cited in the pleadings, as well as the record and the applicable law, the court finds that the application is not well-taken and it will be denied.

**Introduction**

*Facts*

  At the age of sixteen, Taylor was sentenced to life in prison for aggravated robbery. On April 1, 1999, while serving that sentence, he killed Donta Greene, another inmate. Greene had been involved in stealing property from inmate Daniel Richbourg, who was a friend of Taylor's. During

1

the night of March 31, 1999, Taylor and Richbourg, communicating by note, planned a response to the theft. The next morning, Taylor fastened an ice-pick like weapon to his hand, and, when he encountered Greene, stabbed him some thirteen times. Richbourg, who had fastened a knife-like weapon to his hand, kept other inmates from breaking up the fight between Taylor and Greene. Eventually the guards gassed the room and ordered the inmates to lay down. Taylor did so, and then unfastened his weapon and threw it to the guards. As he was being led from the room, he shouted to Greene, "That's what you get for stealing, Bitch." Greene died shortly thereafter.

*Procedural History*

On November 4, 1999, Taylor was indicted for capital murder pursuant to TEX. PENAL CODE §19.03 (a)(6)(B) for intentionally or knowingly killing another individual while serving a sentence of life imprisonment for aggravated robbery. After a jury trial, he was convicted and sentenced to death. His conviction and sentence were affirmed on direct appeal. *Taylor v. State*, No. 73,739 slip op. (Tex. Crim. App. Dec. 11, 2002) (not designated for pub.).

On November 30, 2001, Taylor filed a petition for post-conviction relief in the state court. On March 31, 2004, his petition was denied. *Ex parte Taylor*, No. 58,375-01 slip op. (Tex. Crim. App. Mar. 31, 2004) ( not designated for pub.). On March 30, 2005, he filed an application for a writ of *habeas corpus* in this court.

**Claims**

Taylor raised fourteen claims in his application:

> 1. Because he is actually innocent of the death penalty, his execution would constitute a miscarriage of justice and is therefore barred by the Eighth Amendment.
>
> 2. He was denied the due process of law by the trial court's refusal to submit an instruction to the jury on the lesser- included offense of non-capital murder.

3. He was denied due process of law by the trial court's refusal to submit an instruction to the jury on the lesser included offense of manslaughter.

4. The trial court's failure to submit to the jury a lesser included offense instruction of "sudden passion" denied him due process of law and rendered his sentence cruel and constituted cruel punishment.

5. Tex. Penal Code § 19.02 (d) is vague and ambiguous as applied to him because it creates an ambiguity concerning whether capital defendants are eligible to request a sudden passion charge.

6. Making Tex. Penal Code § 19.02 (d) inapplicable to persons defined in Tex. Penal Code 19.03 (a)(6)(B) violates the Eighth Amendment's prohibition against cruel and unusual punishment by broadening those persons eligible for the death penalty to include some, but not all, persons acting under "sudden passion."

7. The trial court's refusal to submit to the jury his proposed instruction on "sudden passion" denied him due process of law and rendered his sentence cruel and unusual punishment.

8. Tex. Penal Code § 19.02 and § 19.03 are unconstitutionally vague as applied to him and have thus deprived him of due process of law.

9. The 1993 amendments to Tex. Penal Code § 19.02 and § 19.03 violated the Eighth Amendment to the Constitution by broadening the persons who are eligible for the death penalty to include persons who commit murder under the influence of sudden passion.

10. He was denied the right to confront witnesses by the trial court's admission of prison administrative records which contained testimonial hearsay.

11. Because Taylor was sixteen years old at the time he committed aggravated robbery, his death sentence, which was based in part on his conviction for that robbery, constitutes cruel and unusual punishment.

12. Taylor's right of association was violated by the introduction of evidence that he belonged to a white-supremacist organization.

13. Evolving standards of decency that mark the progress of a maturing society prohibit the execution of a person who committed the aggravating element of capital murder before his seventeenth birthday.

14. Taylor's conviction and death sentence under Tex. Penal Code § 19.03 (a)(6)(B) constitutes cruel and unusual punishment, because that statutory provision is over inclusive and vague, and the legislature's decision to use the fact that a person was serving a life sentence for certain crimes, but not others, in order to elevate murder to capital murder deprived him of the equal protection of the laws.

**Standard of Review**

Because Taylor's application for a writ of *habeas corpus* was filed after 1996, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) applies to his claims. Under the AEDPA, a state prisoner seeking to raise claims in a federal petition for *habeas corpus* ordinarily must fairly present those claims to the state court and thereby exhaust his state remedies. *Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir. 2001), *cert. denied sub nom. Martinez v. Cockrell*, 534 U.S. 1163 (2002). If a federal application contains any unexhausted claims, the federal court will attempt to allow the applicant to return to state court and present them to the state court in a successive petition, either by dismissing the entire petition without prejudice, *Rose v. Lundy*, 455 U.S. 509, 520-22 (1982), or by staying the federal proceedings, *Rhines v. Weber*, 544 U.S. 269, 279 (2005).

If it is entirely clear that the state court would refuse to consider the merits of such a successive petition, however, the federal court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). Federal courts generally do not review claims that the state court has refused to address because of procedural defaults unless the applicant can establish either that he had good cause for failing to follow the state procedures, and he would be prejudiced if his claims were not reviewed, or failure by the federal court to address the claims would result in a fundamental miscarriage of justice, because the inmate was actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 749-750 (1991); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001). If it is not entirely clear that the state court would refuse to hear a

4

successive petition containing the new claims, however, the federal court will allow the state court the first opportunity to consider them. *Wilder v. Cockrell,* 274 F.3d 255, 262-63 (5th Cir. 2001).

If the state court denied the claim on its merits, a federal court may only grant relief if the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, *see* Title 28 U.S.C. § 2254 (d)(1), or the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, *see* Title 28 U.S.C. § 2254 (d)(2). The court reviews questions of law and mixed questions of law and fact under section 2254(d)(1), while it reviews questions of fact under section 2254(d)(2). The state court's findings of fact are presumed to be correct, and the applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Richardson v. Quarterman,* 537 F.3d 466, 472-73 (5th Cir. 2008).

If the state court based its decision on the alternative grounds of procedural default and a rejection of the merits of a claim, the general rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006), but the rule is not absolute; a court can look past the question of procedural default if the claims can be resolved more easily on the merits. *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir.) *cert. denied*, 541 U.S. 1087 (2004).

## Analysis

Taylor's first claim is that because he is actually innocent of the death penalty, his execution would constitute a miscarriage of justice and would violate the Eighth Amendment.

Taylor claimed in state court that because he was sixteen years old at the time he committed aggravated robbery, his death sentence, which was based on his conviction for murder committed while serving a life sentence for aggravated robbery, constitutes cruel and unusual punishment. The Texas Court of Criminal Appeals found this claim to have been procedurally defaulted, but also denied it on the merits. *Ex parte Taylor*, No. 58,375-017 slip op. at 2. In this situation, the rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, unless the claim can be resolved more easily on its merits. *Busby v. Dretke*, 359 F.3d at 720. Taylor contends that dismissing this claim because of his procedural default, without reviewing its merits, would constitute a miscarriage of justice because he is actually innocent of the death penalty. The court finds that it need not address this argument because it finds that the claim can be more easily resolved on its merits in any event.

The question for the court is whether the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In *Roper v. Simmons*, 543 U.S. 551, 571-72 (2005), the Supreme Court of the United States held that when imposed upon offenders who committed murder before they turned eighteen years of age, the death penalty serves neither of its two societal purposes - retribution for past crimes or deterrence of future crimes - and therefore violates the Eighth Amendment's ban on cruel and unusual punishment. In the present case, Taylor argues that because one of the elements of TEX. PENAL CODE § 19.03 (a) (6) (B) is that the defendant must be serving a life sentence, and because he committed the crime for which he received his life sentence (aggravated robbery) at the age of sixteen, the death sentence in his case also fails to serve those

purposes.

The court disagrees. Providing for the death penalty for murders committed by inmates serving life sentences fulfills the societal goal for deterrence, since an inmate serving a life sentence would have little fear of longer incarceration. In addition, by the time he committed the murder in this case, Taylor was an adult, so he cannot claim that he was so immature that a death sentence in his case would not serve the societal goal of retribution. Because the state court's rejection of this claim was neither contrary to, nor the result of an unreasonable application of, clearly established federal law, as determined by the Supreme Court in *Roper v. Simmons*, the court will deny Taylor's first claim.

Taylor's second claim is that he was denied the due process of law by the trial court's refusal to submit an instruction to the jury on the lesser included offense of non-capital murder. This claim was never presented to the state courts, so it is unexhausted. Federal courts will allow the applicant to return to state court and present such claims to the state court in a successive petition unless it is entirely clear that the state court would refuse to consider the merits of such a petition, in which case the court will treat the unexhausted claims as if the state court had already refused to hear them on procedural grounds. *Finley v. Johnson*, 243 F.3d at 220. The first question for the court, then, is whether it is entirely clear that the state court would refuse to consider the merits of this claim if it were presented to the state courts in a successive petition.

In order to predict what the state court would do under these circumstances, the court must interpret state procedural law. TEX. CODE CRIM. PROC. art. 11.071, § 5, provides:

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based upon the subsequent application unless the application contains sufficient specific facts establishing that:

7

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the State's favor one or more of the special issues that were submitted to the jury in the applicant's trial under article 37.071, 37.0711, or 37.072.

Taylor does not contend that his claim meets any of the three circumstances which would allow it to be considered by the Texas courts. Accordingly, the court will treat this claim as if it had been procedurally defaulted. The question for the court in these circumstances is whether Taylor had good cause for failing to fairly present this claim to the state courts and would be prejudiced by not having its merits reviewed by the federal courts, or whether the federal court's failure to address the claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 749-750 (1991). Again, Taylor does not contend either circumstance to be the case. The court will dismiss his second claim.

Taylor's third claim is that he was denied due process of law by the trial court's refusal to submit an instruction to jury on the lesser included offense of manslaughter. This claim was rejected on the merits in Taylor's direct appeal, *see Taylor v. State*, No. 73,739 slip op. at 20-24, so the question for the court is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

TEX PENAL CODE § 19.04 defines manslaughter as recklessly causing the death of an individual. Section 6.03 of the Penal Code states in part that a person acts recklessly when, among other things, he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Taylor testified at his trial that he was afraid that he would be attacked by the victim, and thought the victim was about to attack him or was starting to attack him, and he stabbed the victim out of fear. He testified that he didn't remember any of the stabs after the first one, until he stopped stabbing the victim because he realized he was killing him. At the close of the evidence, the defense asked the trial court to instruct the jurors that they could find the defendant guilty of manslaughter. The trial court denied the request.

The question for the court is whether this denial is contrary to, or the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. In *Reed v. Quarterman*, 504 F.3d 465, 489 (5th Cir. 2007), the United States Court of Appeals for the Fifth Circuit held that *Beck v. Alabama*, 447 U.S. 625 (1980), required states to provide instructions for lesser included offenses in capital murder cases if such instructions are warranted under the facts of the case. In *Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir.), *cert. denied*, 486 U.S. 1061 (1988), the Fifth Circuit held that lesser included offense instructions were warranted when, based on the evidence, the jury could rationally acquit the defendant of the capital crime and convict him of the non-capital crime. In the present case, the Texas Court of Criminal Appeals found that on the evidence presented, the jury could not have rationally concluded that Taylor killed the victim recklessly, rather than intentionally or knowingly.

Taylor contends that this finding is unreasonable. He argues that the material issue in this case was his state of mind at the time of his killing, and he testified that he did not intend to kill the

9

victim. Accordingly, the jury should have been given the opportunity to decide whether his testimony was credible. The problem with his argument is that this circuit holds that a juror cannot rationally believe a defendant's testimony as to his own state of mind if that testimony is plainly contradicted by circumstantial evidence. For example, in *Lincecum v. Collins*, 958 F.2d 1271, 1276 (5th Cir.), *cert. denied*, 506 U.S. 957 (1992), the court of appeals held that a defendant was not entitled to lesser included offense instructions on murder and manslaughter where he choked the victim for three minutes after the victim lost consciousness. The court stated that the significant amount of time the defendant choked the victim is strong evidence of his intent to kill. In rejecting Taylor's claim the Texas Court of Criminal Appeals did not refer to any particular evidence which contradicted Taylor's testimony as to his state of mind. However, the Respondent points out in its brief to this court that the attack on the victim was planned by Taylor and Richbourg, that Taylor attacked the victim first, that the weapon Taylor prepared obviously was capable of producing fatal wounds, that Taylor stabbed the victim multiple times in the chest area, and that after the attack, Taylor said that he hoped the victim died. In light of the evidence supporting the proposition that Taylor intended to kill Greene, the court finds that the state court's rejection of this claim was neither contrary to nor the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in *Beck v. Alabama*. The court will therefore deny Taylor's third claim.

Taylor's fourth claim is that the trial court's failure to submit to the jury a lesser included offense instruction of "sudden passion" denied him due process of law and rendered his sentence cruel and constituted cruel punishment. This claim was rejected on the merits in Taylor's direct appeal, *see Taylor v. State*, No. 73,739 slip op. at 24, so the question for the court

is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

As stated in the previous claim, the Supreme Court of the United States held in *Beck v. Alabama* that states must provide juries in capital murder cases the opportunity to find defendants guilty of lesser included offenses if warranted under the facts of the case. Under Texas law, a jury instruction is warranted if the lesser offense is an offense which is included within the proof necessary to establish the offense charged, and there is some evidence in the record that if the defendant is guilty of a crime, he is guilty of only the lesser offense. *Rousseau v. State*, 855 S.W. 2d 666, 672-73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).

The problem with Taylor's argument is that under Texas law, murder committed while under the influence of sudden passion is not included within the proof necessary to establish capital murder. If a defendant who has been found guilty of murder under TEXAS PENAL CODE § 19.02 establishes by a preponderance of the evidence in the punishment phase of his trial that he caused the death of the victim while acting under the immediate influence of sudden passion arising from an adequate cause, his conviction is reduced from a first degree felony to a second degree felony. *See* section 19.02 (d). A defendant who is convicted of capital murder under section 19.03 may also offer sudden passion evidence at the punishment determination phase of his trial. The jury may consider that evidence in deciding whether to spare him from death, but the jury's decision is discretionary. *Westbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). Because the Texas Legislature defined "sudden passion" as a partial affirmative defense, which may be raised only after conviction, it is not included in the elements of the offense of either murder or capital murder. Because "sudden passion" need not be proved in order to

11

establish capital murder, murder committed under the influence of sudden passion is not a lesser included offense of capital murder. *Westbrook v. State*, 29 S.W.3d at 113. As Taylor was not entitled to a jury instruction on sudden passion at the guilt determination phase of his capital murder case, the state court's rejection of this claim was neither contrary to nor the result of an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States in *Beck v. Alabama*. The court will deny Taylor's fourth claim.

Taylor's fifth claim is that TEX. PENAL CODE § 19.02 (d) is vague and ambiguous as applied to him because it creates an ambiguity concerning whether capital defendants are eligible to request a sudden passion charge. This claim was rejected on the merits in Taylor's direct appeal, *Taylor v. State*, No. 73,739 slip op. at 24-25, so the question for the court is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

The court agrees with Taylor that at the time he was tried, a reasonable person reading sections 19.02 and 19.03 together would be unsure whether the partial affirmative defense of sudden passion, which is applicable in a murder case under section 19.02, might also be available in a capital murder case, since section 19.03 requires, *inter alia*, that a defendant commit murder as defined by section 19.02.[1] Taylor cites to no Supreme Court precedent, however, and the court has found none, that ambiguity in this context renders a criminal statute unconstitutional. "[N]ot all ambiguities in statutes negate fair notice and rise to the level of unconstitutional vagueness." *National Salvage and Service Corp. v. Commissioner of Indian Dept. Of Environmental Management*, 571 N.E. 2d 548,

---

[1] The *Westbrook* opinion, which clarified that the defense of sudden passion may be raised at the punishment determination phase of a capital murder trial was not issued until September of 2000, several months after Taylor's trial.

555 (Ct. App. Ind. 1991), *cert. denied*, 506 U.S. 871 (1992), *citing Robinson v. United States*, 324 U.S. 282, 286 (1945). Because the state court's rejection of this claim was neither contrary to, nor the result of an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, this court will deny Taylor's fifth claim.

Taylor's sixth claim is that making the sudden passion affirmative defense inapplicable to persons on trial for capital murder violates the Eighth Amendment's prohibition against cruel and unusual punishment by broadening those persons eligible for the death penalty to include some, but not all, persons acting under "sudden passion." This claim was rejected on the merits in Taylor's direct appeal, *Taylor v. State*, No. 73,739 slip op. at 24-25, so the question for the court is whether the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

The Supreme Court has held that a capital sentencing scheme (1) must provide a meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not, *Godfrey v. Georgia*, 446 U.S. 420, 427 (1980), (2) must first genuinely narrow the class of persons eligible for the death penalty and reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder, *Zant v. Stephens*, 462 U.S. 862, 877 (1983), and (3) must then guide and focus the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose the sentence of death. *Jurek v. Texas*, 428 U.S. 262, 276 (1976).

As Taylor points out, in a murder case, the fact that a defendant killed while under the influence of sudden passion automatically reduces a first degree murder to a second degree murder, while in a capital murder case, the fact that a defendant killed while under the influence of sudden passion may be considered as mitigating evidence by the jury, but it does not preclude the jury from sentencing the defendant to death. Taylor's contention that this situation is untenable is based on the implicit premise that it is cruel and unusual punishment to execute a person who commits murder while under the influence of sudden passion. This argument is not without appeal, but unless or until it becomes clearly established by the Supreme Court of the United States, relief is not available in *habeas corpus*. *See* Title 28 U.S.C. § 2254 (d)(1). Because the state court's denial of this claim was neither contrary to nor the result of an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States in *Godfrey*, *Zant* and *Jurek,* the court will deny Taylor's sixth claim.

Taylor's seventh claim is that the trial court's refusal to submit to the jury his proposed instruction on "sudden passion" denied him due process of law and rendered his sentence cruel and unusual punishment. This claim was rejected on the merits in Taylor's direct appeal, *see Taylor v. State*, No. 73,739 at 24, so the question for the court is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

This claim is indistinguishable from Taylor's fourth claim. For the reasons set forth in the analysis of that claim on pp. 11-12, the court will deny Taylor's seventh claim.

Taylor's eighth claim is that TEX. PENAL CODE §19.02 and §19.03 are unconstitutionally vague as applied to him and have thus deprived him of due process of law. This claim was

rejected on the merits in Taylor's direct appeal, *see Taylor v. State*, No. 73,739 at 24-25, so the question for the court is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

This claim is indistinguishable from Taylor's fifth claim. For the reasons set forth in the analysis of that claim on pp. 12-13, the court will deny Taylor's eighth claim.

Taylor's ninth claim is that the 1993 amendments to TEX. PENAL CODE § 19.02 and § 19.03 violated the Eighth Amendment to the Constitution by broadening the persons who are eligible for the death penalty to include persons who commit murder under the influence of sudden passion. This claim was rejected on the merits in Taylor's direct appeal, *see Taylor v. State*, No. 73,739 slip op. at 24-25, so the question for the court is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

This claim is indistinguishable from Taylor's sixth claim. For the reasons set forth in the analysis of that claim on pp. 13-14, the court will deny Taylor's ninth claim.

Taylor's tenth claim is that he was denied the right to confront witnesses by the trial court's admission of prison administrative records which contained testimonial hearsay. In Taylor's direct appeal, the Texas Court of Criminal Appeals found that this claim had been procedurally defaulted, but it also rejected it on the merits. *See Taylor v. State*, No. 73,739 slip op. at 16-20 (Tex. Crim. App. 2002). In this circumstance, the rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, unless the claim can be resolved more easily on its merits.

*See Busby v. Dretke*, 359 F.3d at 720. The court finds it easiest to resolve this claim on the merits.

In the punishment determination phase of Taylor's trial, the prosecution offered as evidence a packet of documents referencing disciplinary actions taken against Taylor while he was an inmate. Several of these documents contained statements made by other inmates and guards about assaults Taylor had committed against other inmates and threats he had made to correctional officers. The defense objected "on the basis that it's inadmissible hearsay. It denies our right to confront and cross-examine the people who have made those statements."

The prosecution argued that the records were admissible under an exception to the hearsay rule for business records. The defense responded that the records contained hearsay within hearsay, and were still a denial of the right to confront and cross-examine. The trial court overruled the objection and admitted the records.

On appeal, Taylor argued that the trial court erred because, even though the disciplinary packet was a business record, it should have been excluded as a matter observed by law enforcement personnel. *See* TEX. R. EVID. 803 (b)(8); *see also Cole v. State*, 839 S.W.2d 798, 801-06 (Tex. Crim. App. 1990). The Court of Criminal Appeals found that because the defense did not mention Rule 803 (b)(8) and the *Cole* case at the time it objected, it failed to preserve the error for appeal. The court further found that, because Taylor's federal constitutional claim (denial of the right to confront and cross-examine) was predicated on his procedurally defaulted state-law *Cole* claim, Taylor failed to preserve his federal constitutional claim as well.

The question for the court is whether the state court's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. In *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), the Supreme

Court of the United States held that the admission of hearsay evidence in a criminal trial violates the confrontation clause unless the witness is shown to be unavailable, and the evidence bears adequate indicia of reliability, which can be inferred if the evidence falls within a firmly rooted hearsay exception. On appeal, Taylor contended that because of TEX. R. EVID. 803 (b)(8) and the opinion in *Cole*, the hearsay evidence in his disciplinary records did not fall within the firmly rooted business records exception to the hearsay rule, and under *Roberts*, it should not have been admitted.

Taylor now contends that the state court's decision was unreasonable because *Roberts* has been partially overruled by *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court held that if the hearsay sought to be admitted in a criminal trial is testimonial in nature, it is inadmissible, even if it falls within a firmly rooted hearsay exception. 541 U.S. at 68. Taylor contends that much of the damaging hearsay in his disciplinary packet was testimonial in nature. One problem with this argument is that the *Crawford* opinion was issued a year after Taylor's conviction became final, and the Supreme Court has held that it does not apply retroactively. *Whorton v. Bockting*, 549 U.S. 406, 417 (2007). Accordingly, *Crawford* cannot form a basis for relief in *habeas corpus* for Taylor. *See Teague v. Lane*, 489 U.S. 288, 310 (1989).

Taylor's other contention is that several statements in the disciplinary records which he allegedly made to others were hearsay within hearsay and were therefore inadmissible even if the records themselves were otherwise admissible. They included statements by others that he (Taylor) had admitted his guilt as to various infractions, a statement by a guard that he (Taylor) had said to him, "You ain't shit. You can be hit with jack mack cans from the back," and a

17

statement by another guard that he (Taylor) had told him that he wanted some rank and that he (the guard) had better give it to him.

One problem with this argument is that the statements at issue were not hearsay. Taylor's admissions of guilt constituted admissions by a party-opponent, which are not defined as hearsay. *See* TEX. R. EVID. 801 (e)(2). Taylor's two statements to guards were not offered to prove the truth of the matters asserted in the statements, so they do not constitute hearsay. *See* TEX. R. EVID. 801(d). Because Taylor's statements did not constitute hearsay, they could not constitute hearsay within hearsay when repeated by others.

Because the state court's denial of this claim was neither contrary to nor the result of an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States in *Ohio v. Roberts*, the court will deny Taylor's tenth claim.

Taylor's eleventh claim is that because he was sixteen years old at the time he committed aggravated robbery, his death sentence, which was based in part on his conviction for that robbery, constitutes cruel and unusual punishment. The Texas Court of Criminal Appeals not only found that this claim was procedurally defaulted, but also denied it on the merits. *See Ex parte Taylor*, No. 58,375-017 slip op. at 2. The rule in this circuit is that a federal court must, in the absence of good cause and prejudice or a fundamental miscarriage of justice, deny relief because of the procedural default, unless the claim can be resolved more easily on its merits. *Busby v. Dretke*, 359 F.3d at 720.

This claim is indistinguishable from Taylor's first claim. For the reasons stated in the analysis of that claim on pp. 6-7, the court will deny Taylor's eleventh claim.

Taylor's twelfth claim is that his right of association was violated by the introduction of evidence that he belonged to a white-supremacist organization. The Texas Court of Criminal Appeals refused to address the merits of this claim because it found that the claim was not properly preserved for appeal. *See Taylor v. State*, No. 73,739 slip op. at 27. If a state court refuses to address a claim on procedural grounds, review in *habeas corpus* is generally barred as well unless the inmate establishes that he had good cause for his default and he would be prejudiced by not having the merits of the claim reviewed by the federal courts, or he establishes that failing to address the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 749-750 (1991). Because Taylor does not allege either circumstance to be the case, the court will dismiss his twelfth claim.

Taylor's thirteenth claim is that the evolving standards of decency that mark the progress of a maturing society prohibit the execution of a person who committed the aggravating element of capital murder before his seventeenth birthday. The Texas Court of Criminal Appeals not only found that this claim was procedurally defaulted, but also denied it on the merits. *See Ex parte Taylor*, No. 58,375-017 slip op. at 3. The rule in this circuit is that a federal court must, in the absence of good cause and prejudice or a fundamental miscarriage of justice, deny relief because of the procedural default, unless the claim can be resolved more easily on its merits. *Busby v. Dretke*, 359 F.3d at 720. The court finds that it is easier to resolve this claim on its merits, so the question for the court is whether the state court's adjudication of this claim is either contrary to or the result of an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

This claim is indistinguishable from Taylor's first claim. For the reasons stated in the court's analysis of that claim, it will deny Taylor's thirteenth claim.

Taylor's fourteenth and final claim consists of two sub-claims. First, he contends that his conviction and death sentence under TEX. PENAL CODE § 19.03 (a)(6)(B) constitute cruel and unusual punishment, because that statutory provision is over inclusive and vague. Second, he contends that the legislature's decision to use the fact that a person was serving a life sentence for certain crimes, but not others, in order to elevate murder to capital murder deprived him of the equal protection of the laws.

The state court found that this claim was procedurally defaulted, but also denied relief on the merits. *See Ex parte Taylor*, No. 58,375 slip op. at 1-2. The rule in this circuit is that a federal court must, in the absence of good cause and prejudice, or a fundamental miscarriage of justice, deny relief because of the procedural default, unless the claim can be resolved more easily on its merits. *Busby v. Dretke*, 359 F.3d at 720. Taylor does not allege either that he had good cause for his default and that he would be prejudiced by the court's failing to address the merits of his claim, or that failure by the court to address the merits of his claim would result in a fundamental miscarriage of justice. The court will therefore dismiss his fourteenth claim.

### Conclusion

For the reasons set forth above, the court will dismiss with prejudice the second, twelfth and fourteenth claims in Taylor's application for a writ of *habeas corpus*, and it will deny his first, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and thirteenth claims on their merits. An order and judgment denying his application will be entered.

**SIGNED this the 28th day of August, 2009.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE